# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NATHANIEL THORNTON | CIVIL ACTION |
| VERSUS | NO. 09-1632 |
| TERRY TERRELL, WARDEN | SECTION "B"(2) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Nathaniel Thornton, is incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2] Thornton was indicted by a grand jury in Orleans Parish with the second degree murder of Guy Henderson.[3] His co-defendant, Jernard Walker, was charged in a separate count as an accessory after the fact to second degree murder. That count was eventually nolle prosequied on August 30, 2002.[4] The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> New Orleans Police Officer Errol Washington responded to an aggravated battery call at Ben's Grocery Store on April 2, 1999. The store was located at 6445 Isadore Street, at the intersection of General Mayer Avenue, two blocks from the river. Upon his arrival, Officer Washington observed an unknown male lying facedown [sic] in a pool of blood inside the store entryway. The victim, who Officer Washington believed was still alive, was later identified as Guy Henderson.
> . . .
> Rochelle Winchester testified that the victim had been an attendant at her wedding. She knew who defendant was, but did not know him personally. At 6:30 or 7:00 a.m. on the morning of the murder, defendant knocked on her door and asked if her husband, Eddie Winchester, was home. She said he was not, whereupon defendant asked if the victim was there. Again, Mrs. Winchester replied in the negative. She said defendant was traveling in a truck. She saw defendant the next day, the day after the murder, when he came to her residence looking for her husband Eddie. Mrs. Winchester next saw defendant perhaps ten to fifteen days later, as she was exiting a bus on Canal Street. She then informed

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 13, Indictment, 5/24/01. Apparently, Thornton had been indicted for the same charge on June 16, 1999 and that indictment was nolle prosequied on September 13, 2001. St. Rec. Vol. 4 of 13, Indictment, 6/17/99.

[4]Id., hand written notation date 8/30/02.

a police officer who was in the Canal Street neutral ground. Mrs. Winchester subsequently saw the officer chase defendant.

. . .

Eddie Winchester testified that he was a close friend of the victim, and was with him on the morning of the murder. . . . Mr. Winchester said that at approximately 5:30 a.m., he and the victim rode a bus to the east bank of the river, ate breakfast at the Greyhound Bus Terminal, and returned to the west bank. They went to Ben's Grocery Store, where he gave the victim a dollar to buy a beer. Mr. Winchester remained outside, while the victim went into the store. While outside, Mr. Winchester observed the defendant drive up in a small black or blue pickup truck. Defendant walked up to Mr. Winchester talking about "his money." Mr. Winchester said he thought defendant was playing, because they had been out all night together, and casually pushed him. Defendant walked off saying, "yeah, all right." Defendant went to the truck, and the victim walked out of the store. Defendant came back, said something about his money, and shot the victim. Defendant then walked back to the truck, entered, and drove off. Mr. Winchester testified that he had seen the gun earlier that night, in the truck. Mr. Winchester maintained that he did not have a gun that night. Mr. Winchester went to his grandfather's home, a half block away, and got a van, intending to take the victim to the hospital. However, a man inside the store informed him he had telephoned the police, who directed him not to touch the victim. Mr. Winchester said he then left the scene. Mr. Winchester said on cross examination that the victim was shot outside of the store, but that by the time he returned with his grandfather's van the victim was inside of the store.

. . .

Defendant testified he was with a female friend on the night of the murder, until she dropped him off at approximately 11:00 p.m., at an apartment complex located near the corner of Preston and Isadore Streets. They referred to this area outside of or within the apartment complex as "the cutoff." The victim and Eddie Winchester were there. Eddie Winchester was selling drugs. The victim was standing around. Defendant said he gave Eddie Winchester $75 in exchange for $150-$160 worth of drugs. Defendant said he had $500 or $600 that night in a roll, which he flashed when he peeled off the $75 to give Eddie Winchester. Afterward, defendant, Eddie Winchester and the victim went to a convenience store in a small dark-colored pickup truck being driven by Jernard Walker. Defendant rode in the bed of the truck across from the victim. At one point, defendant noticed through the small open window in the truck's cab that Eddie Winchester had placed a gun on the seat, between him and the driver. Defendant bought a bottle of Crown Royal at the store, and the four men went back to the cutoff to drink it. Defendant said it was then about 3:00 or 4:00 p.m. [sic] He left

3

to make a drug sale, and when he returned to the cutoff the victim and Winchester were gone.

Defendant recalled them saying something about going to Winchester's home, so he got a ride there with a friend in a four-door car. Mrs. Winchester told him Eddie was not there, that he was in the cutoff. Defendant returned to the cutoff at approximately 6:30 a.m., where he found Eddie Winchester and the victim. They subsequently walked to Ben's Grocery Store. The two of them were behind the defendant. They were talking, but he could not hear what they were saying. The victim went into the store, while defendant and Eddie Winchester remained outside. Defendant heard the bell on the door of the store ring, and the next thing he knew the victim was pointing a gun at his face and demanding his money. Defendant said he kept his hands up in the air, expressing disbelief at what the victim was doing. Eddie Winchester ran up behind him, cut open his pants pocket with a knife, grabbed defendant's roll of money, and fled. The victim was still holding the gun on him. Defendant said at that point he attempted to take the gun. He and the victim struggled over the gun for several seconds until it discharged. He said he had his hand on the gun, and the victim had his left hand on it. Defendant said he did not intend to discharge the gun. He did not know where the bullet struck. He saw no blood on the victim. The victim released his grip on the gun after it discharged, and walked into the store. Defendant said the victim had nothing in his hands when he approached him except the gun. He did not have a beer.

After the shooting, the defendant left the scene and went to his mother's residence with the gun. He said he kept if [sic] for protection, because he knew Eddie Winchester was coming to look for him. He also said he did not want to leave the gun on the street. . . . Defendant said that when he left the scene he saw Jernard Walker, and got in his truck. When he told Walker what happened, Walker wanted nothing to do with it, and jumped out of the truck. Defendant drove the truck to his mother's residence. . . .

State v. Thornton, 866 So.2d 421 (La. App. 4th Cir. 2004) (Table); State Record Volume 11 of 13, Fourth Circuit Opinion, 2003-KA-0907 c/w 2003-K-0699, pages 2-11, February 4, 2004.

Thornton was tried before a jury on September 17, 18 and 19, 2001, and he was found guilty of the lesser offense of manslaughter.[5] The state trial court sentenced Thornton on October 15, 2001, to serve 30 years in prison with credit for time served and to an additional five years under Louisiana's firearm enhancement provision, to be served consecutively without benefit of parole, probation, or suspension of sentence.[6] The court also denied Thornton's motions for new trial and to reconsider the sentence under the firearm provision.[7] The State also filed a multiple offender bill at the hearing.[8]

On January 18, 2002, Thornton's counsel filed a second motion seeking a new trial, which was denied by the court at a hearing held February 5, 2002.[9] Thereafter, on February 25, 2003, the state trial court found Thornton <u>not</u> guilty on the multiple bill,

---

[5]St. Rec. Vol. 1 of 13, Trial Minutes, 9/17/01; Trial Minutes, 9/18/01; Trial Minutes, 9/19/01; St. Rec. Vol. 4 of 13, Jury Verdict, 9/19/01; St. Rec. Vols. 9-10, 9/17-19/01.

[6]St. Rec. Vol. 1 of 13, Sentencing Minutes, 10/15/01; St. Rec. Vol. 11 of 13, Sentencing Transcript, 10/15/01.

[7]Id.; St. Rec. Vol. 11 of 13, Sentencing Transcript, p. 6, 10/15/01 (denial of motion for new trial).

[8]Id.; St. Rec. Vol. 2 of 13, Multiple Bill, 10/15/01.

[9]St. Rec. Vol. 2 of 13, Supplemental Motion for New Trial, 1/18/02; St. Rec. Vol. 11 of 13, Hearing Transcript, 2/5/02.

finding that the State's evidence was inadequate to establish that Thornton was a second offender.[10] The court denied Thornton's oral motion to reconsider the sentence.[11]

On appeal to the Louisiana Fourth Circuit, Thornton's counsel raised four grounds for relief:[12] (1) The evidence was insufficient to support the manslaughter verdict. (2) The State withheld exculpatory evidence that it had refused the charge as to Eddie Winchester's arrest for aggravated assault. (3) The sentence was excessive. (4) The trial court erred in denying the motion to quash the indictment based on an unconstitutional grand jury selection process. In the consolidated appeal,[13] the State raised one issue challenging the trial court's findings as to the multiple bill.[14]

The court affirmed the conviction on February 4, 2004, finding no merit to Thornton's claims. The court, however, agreed with the State's arguments and rendered judgment adjudicating Thornton to be a second offender. The court also found that the trial court erred in imposing a separate sentence under the firearm statute, which only required that a minimum five-year sentence be imposed. The court vacated the sentence

---

[10] St. Rec. Vol. 1 of 13, Multiple Bill Hearing Minutes, 2/25/03; Multiple Bill Hearing Minutes, 12/6/02; St. Rec. Vol. 11 of 13, Multiple Bill Hearing Transcript, 12/6/02; Multiple Bill Hearing Transcript, 2/25/03.

[11] Id.

[12] St. Rec. Vol. 11 of 13, 4th Cir. Opinion, 2003-KA-0907 c/w 2003-K-0699, 2/4/04.

[13] See St. Rec. Vol. 3 of 13, 4th Cir. Order, 2003-K-0699, 5/6/03.

[14] St. Rec. Vol. 11 of 13, 4th Cir. Opinion, 2003-KA-0907 c/w 2003-K-0699, 2/4/04.

and remanded the matter for the trial court to resentence Thornton as a second offender and in accordance with the minimum five-year sentence imposed under the firearm provision. The state trial court resentenced Thornton accordingly to serve 30 years with the first five years to be served without benefit of parole, probation or suspension of sentence under the firearm provision.[15]

In the meantime, Thornton's counsel filed a timely[16] writ application on March 4, 2004, with the Louisiana Supreme Court seeking review of only one claim, that the Louisiana Fourth Circuit erred in failing to reverse the conviction after finding that Thornton was indicted by a grand jury empaneled under an unconstitutional statute.[17] The Louisiana Supreme Court denied the application without reasons on July 2, 2004.[18]

Thornton's conviction became final 90 days later, on September 30, 2004, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States

---

[15]St. Rec. Vol. 1 of 13, Sentencing Minutes, 3/25/04.

[16]Pursuant to La. Code Crim. P. art. 922 and La. S. Ct. R. X§5, petitioner had 30 days from the denial of the application for rehearing to file a writ application in, or mail one to, the Louisiana Supreme Court. Counsel's writ application was hand delivered to the court on March 4, 2004, which was thirty days of the appellate court's ruling. See St. Rec. Vol. 11 of 13, La. S. Ct. Letter, 2004-K-556, 3/4/04 (indicating the hand delivery on the same date); St. Rec. Vol. 13 of 13, La. S. Ct. Writ Application, 04-K-556, 3/4/04; Causey v. Cain, 450 F.3d 601 (5th Cir. 2006).

[17]St. Rec. Vol. 13 of 13, La. S. Ct. Writ Application, 04-K-556, 3/4/04.

[18]State v. Thornton, 877 So.2d 142 (La. 2004); St. Rec. Vol. 13 of 13, La. S. Ct. Order, 2004-K-0556, 7/2/04.

7

Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On December 9, 2004, Thornton submitted an application for post-conviction relief, which was filed in the state trial court on January 6, 2005, challenging the indictment based on the unconstitutional statute under which the grand jury was empaneled.[19] After appointing counsel and obtaining an answer from the State, the state trial court held a hearing on December 6, 2006.[20] After receiving argument, the court denied relief and afforded defense counsel 75 days to seek review.

Counsel filed a writ application with the Louisiana Fourth Circuit on February 16, 2007, raising the grand jury selection process issue.[21] The court denied relief on March 19, 2007, finding that the issue had already been addressed on direct appeal and that Thornton failed to show that it had a substantial effect on his conviction.[22]

On April 12, 2007, Thornton submitted pro se a writ application, which was filed in the Louisiana Supreme Court on May 2, 2007, presenting the grand jury selection

---

[19]St. Rec. Vol. 4 of 13, Application for Post-Conviction Relief, 1/6/05 (signed 12/9/04).

[20]St. Rec. Vol. 1 of 13, Hearing Minutes, 12/6/06; St. Rec. Vol. 3 of 13, Trial Court Judgment, 1/20/05; St. Rec. Vol. 1 of 13, Minute Entry, 1/20/05; Minute Entry, 2/2/05 (counsel appointed); Minute Entry, 3/15/05 (State ordered to answer); Minute Entry, 4/18/05 (State failed to answer and waived procedural objections); State's Answer to Application for PCR, 12/6/06.

[21]St. Rec. Vol. 13 of 13, 4th Cir. Writ Application, 2007-K-0220, 2/16/07.

[22]St. Rec. Vol. 13 of 13, 4th Cir. Order, 2007-K-0220, 3/19/07.

issue.[23] The court denied the application on February 1, 2008, finding it to be repetitive pursuant to La. Code Crim. P. art. 930.4(A).[24]

## II. FEDERAL HABEAS PETITION

On January 29, 2009, the clerk of this court filed Thornton's petition for federal habeas corpus relief in which he raises four grounds for relief:[25] (1) The conviction was obtained by the unconstitutional selection of the grand jury. (2) The grand jury selection process violated equal protection. (3) The unconstitutional state law violated due process. (4) A substantial right was affected where the grand jury empanelment violated state law.

The State filed a response in opposition to the petition, arguing that Thornton's petition was not timely filed.[26]

## III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[23]St. Rec. Vol. 13 of 13, La. S. Ct. Writ Application, 07-KH-924, 5/2/07 (signed 4/12/07).

[24]State ex rel. Thornton v. State, 976 So.2d 711 (La. 2008); St. Rec. Vol. 13 of 13, La. S. Ct. Order, 2007-KH-0924, 2/1/08. La. Code Crim. P. art. 930.4 provides that the court shall not consider any claim for relief which was fully litigated in an appeal.

[25]Rec. Doc. No. 1.

[26]Rec. Doc. No. 9.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Thornton's petition, which, for reasons discussed below, is deemed filed in a federal court on January 13, 2009.[28]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Thornton's petition was filed by the clerk of court on January 29, 2009, when the filing fee was paid. Thornton dated his signature on the petition on January 13, 2009. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The State argues that Thornton's petition was not timely filed in this court. This conclusion is supported by the record.

IV. STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final[29] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Thornton's conviction was final on September 30, 2004, which was 90 days after the Louisiana Supreme Court denied his writ application following his direct appeal.

Under a literal application of the statute, Thornton had until September 30, 2005, to file his federal habeas corpus petition, which he did not do. His petition must be

---

[29]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Thornton has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See Hardy v. Quarterman, --- F.3d ----, No. 08-40161, 2009 WL 2357023, at *3-4 (5th Cir. Aug. 3, 2009) (Equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state

habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal

habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same

substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Thornton's case on October 1, 2004, the day after his conviction was final. The limitations period ran for 69 days, until December 9, 2004, when he submitted his application for post-conviction relief to the state trial court.

The filing period remained tolled from that date, December 9, 2004, until February 1, 2008, when the Louisiana Supreme Court denied Thornton's related post-conviction writ application. The AEDPA limitations period began to run again the next day, on February 2, 2008, and it ran uninterrupted for the remaining 296 days of the AEDPA limitations period, until Sunday, November 23, 2008, or the next business day, Monday, November 24, 2008, when it expired. Thornton had no state post-conviction or other collateral review pending during that time period. This was almost two months before Thornton submitted the instant federal petition under the mailbox rule on January 13, 2009.

The record establishes that, after his conviction became final, Thornton allowed more than one year to lapse without any properly filed and pending state court

proceeding and without having filed a timely federal petition for habeas corpus relief. Thus, his petition, deemed filed on January 13, 2009, must be dismissed as time-barred.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Nathaniel Thornton for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __14th__ day of August, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

17